**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JERRY STAPLES,**

                **Plaintiff,**           3:11-cv-183
                                                                    **(GLS)**

        v.

**MICHAEL ASTRUE,** Commissioner of
Social Security,

                **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN      JOANNE JACKSON
United States Attorney               Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jerry Staples challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).[1]  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Staples' complaint.

## II. Background

On November 30, 2006, Staples filed an application for DIB under the Social Security Act ("Act"), alleging disability since July 9, 1998.  (Tr.[2] at 82.)  After his application was denied, Staples requested a hearing before an Administrative Law Judge (ALJ), which was held on January 13, 2009.  (*See id.* at 21, 60, 63.)  On August 26, 2009, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-5, 10-20.)

---

[1] While the Complaint references supplemental security income (SSI), (*see* Compl., ¶ 1), that claim will not be addressed because Staples did not seek SSI in his November 30, 2006 application for benefits.

[2]  Page references preceded by "Tr." refer to the Administrative Transcript in this case. (See Dkt. No. 9.)

2

Staples commenced the present action by filing a complaint on February 17, 2011, seeking review of the Commissioner's determination. (*See* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 16, 19.)

### III.  Contentions

Staples contends that the Commissioner's decision was the product of the application of improper legal standards and is unsupported by substantial evidence.  (*See generally* Dkt. No. 16.)  Specifically, Staples claims that the ALJ erred in: (1) failing to find that his physical and psychological problems constituted a severe impairment; (2) improperly discounting his credibility; and (3) not enlisting the services of a medical expert.  (*See id.* at 5-11.)  The Commissioner counters that the ALJ's decision was arrived at through the application of proper legal standards and is supported by substantial evidence.  (*See generally* Dkt. No. 19.)

### IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Dkt. No. 16 at 1-5; Dkt. No.19 at 2.)

### V.  Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Severity Determination

Staples contends first that the ALJ improperly evaluated the severity of his physical and psychological impairments. (*See* Dkt. No. 16 at 5-9.) The Commissioner counters, and the court agrees, that substantial evidence supports the ALJ's finding of non-severity. (*See* Dkt. No. 19 at 4-10.)

For an impairment or combination of impairments to be deemed "severe," it must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities" for at least 12 consecutive months.[3]  20

---

[3] Contrary to the authority which he cites, Staples misstates the severity threshold, proclaiming that an impairment is "'severe' if it creates *any* functional impairment to working." (Dkt. No. 16 at 5 (emphasis added).)

4

C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1509.  A finding of non-severity results where the claimant suffers "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on [his] ability to work."  *Christiana*, 2008 WL 759076, at *4 (internal quotation marks and citation omitted).  The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling" and "[u]nderstanding, carrying out, and remembering simple instructions."  20 C.F.R. § 404.1521(b).

    Following a thorough analysis of the record evidence, the ALJ determined that, as of March 31, 2001—the agreed-upon date last insured—Staples' combined impairments did not significantly limit his ability to perform basic work activities.  (Tr. at 16.)  On August 22, 1996, following a considerable back injury, Staples underwent a "C3 through C7 decompressive cervical laminectomy."  (*Id.* at 124-25.)  In a post-operative appointment, he was described as doing "very well," and by July 1997, his complaints were limited to slight, intermittent tingling and swelling in his hands and elbows.  (*Id*. at 759, 761.)  The tingling and swelling occurred

5

primarily when Staples watched television or drove, and was relieved by him rubbing his arms. (*Id.* at 759.) Despite this tingling and swelling, Staples denied any clumsiness in his hands and exhibited full motor strength. (*Id.*) One year later, despite continued complaints of residual pain, numbness and swelling in his hands and elbows, Staples' condition was described as "markedly improved". (*Id.* at 753.) In September 1998, Staples reportedly felt, overall, "much improved." (*Id*. at 752.) The following March, Staples told Dr. Albert Murtland, an examining orthopedic specialist, that while he suffered "transitory" arm pain, his current medication was "of marked help." (*Id.* at 735.) Murtland noted that despite some limitation in movement, Staples was able to turn his neck "remarkably well," and required "no acute care." (*Id*.)

In June 1999, while intoxicated, Staples put his arm through glass, lacerating his wrist and requiring six sutures. (*Id*. at 40-41, 720.) Five days later, he again reported numbness and swelling in his arms and hands, with a specific emphasis on his right arm. (*Id.* at 751.) Despite his complaints, Staples continued to exhibit full strength and normal sensation bilaterally. (*Id*.) An epidural steroid block was considered unwarranted, and Staples was advised to avoid lifting and sudden movement. (*Id.*) In

6

light of the absence of similar recommendations in the record, the ALJ properly categorized this advisement as temporary in nature. (*Id*. at 18.) In January 2000, Staples was reported to be "doing well," with full strength and sensation, and suffering only from "rare pain," which was controlled by medication. (*Id.* at 718.)

In addition to Staples' physical ailments,[4] he also experienced psychological impairment. In June 1996, Staples was diagnosed with adjustment disorder with depressed mood after complaining of "occasional feelings of sadness and depression," which appeared related to his physical impairments and persistent memories of service in Vietnam. (*Id*. at 768, 770.) He denied suicidal or homicidal ideation, had no evidence of thought disorder, and reported that spending time "fishing or with his friends" generally relieved his negative feelings. (*Id*. at 769-70.) In February 2002, nearly a year after his date last insured,[5] Staples stated that his depression was "not particularly bad" and denied experiencing

---

[4] In addition to back, neck and arm pain, the ALJ also included in his severity analysis two physical ailments which were not discussed by Staples in his papers: a stab wound received in Vietnam and a skin condition which required him to drain lesions on his head, buttocks and under his arms. (Tr. at 18.)

[5] In an effort to fully develop the record, the ALJ discussed the impact of Staples' impairments in the years following his date last insured. (*Id*. at 18-19.)

7

frequent nightmares.  (*Id*. at 711.)  One year later, he complained of frequent nightmares and insomnia and was diagnosed with Posttraumatic Stress Disorder (PTSD).  (*Id*. at 191-92.)  During a psychological consultation in March 2003, Staples indicated that he was not "overly bothered" by his nightmare symptoms, and eschewed further treatment or medication.  (*Id*. at 188.)  Eight months later, he was found to have "no significant impairments regarding his basic competence for maintaining himself independently in the community and carrying out activities of daily living," and it was determined that, in light of his longstanding alcohol abuse, his "primary need [was] to stop using alcohol."  (*Id*. at 686.)

While Staples' PTSD symptoms appear to have worsened in subsequent years, (*see id*. at 18, 138, 160-61), substantial evidence supports a finding that his ability to perform basic work activities was not significantly limited by his combination of physical and mental impairments prior to his date last insured.

**B.     Credibility Determination**

Staples argues next that the ALJ's determination of his credibility was impermissibly cursory.  (*See* Dkt. No. 16 at 9-11.)  The Commissioner counters that the ALJ properly assessed all relevant factors in discounting

Staples' credibility. (*See* Dkt. No. 19 at 10-12.) Again, the court agrees with the Commissioner.

Once an ALJ determines that the claimant suffers from a "'medically determinable impairment[] that could reasonably be expected to produce' the pain alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1529(c)(1), (c)(3)(i)-(vii)). In performing this credibility analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."[6] SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

---

[6] In addition to the objective medical evidence, the ALJ must consider the following factors in making his credibility determination:

> "(1) claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain."

*Meadors*, 370 F. App'x at 184 n.1 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

Staples' contention that the ALJ summarily discounted his credibility is entirely without merit. The ALJ explicitly discussed the nature and frequency of Staples' complaints of neck, back and chest pain, tingling and swelling in his arms, hands and wrists, and skin lesions. (*See* Tr. at 17-19.) Furthermore, the ALJ addressed the factors which precipitated these ailments, the medicinal and non-medicinal steps employed to alleviate pain and discomfort, and the ways in which Staples' impairments impacted his daily functioning. (*See id*.) In performing this thorough analysis, the ALJ permissibly concluded that Staples' subjective complaints of pain were unsupported by the record. (*See id*. at 16.) Accordingly, the ALJ applied the correct legal standard in assessing Staples' credibility, and his determination that Staples' subjective statements were not fully credible was supported by substantial evidence.

**C.    Medical Examiner**

Finally, Staples avers that, because the date last insured is remote in time, the ALJ was obligated, pursuant to SSR 83-20, to "seek the services of a medical advisor to comment upon the effect that the medical conditions had upon" him prior to that date. (Dkt. No. 16 at 11.) The Commissioner contends, and the court agrees, that SSR 83-20 is

10

inapplicable in this case. (*See* Dkt. No. 19 at 13.)

"Under SSR 83-20, the ALJ's decision regarding the onset date of disability 'must have a legitimate medical basis' and he 'should call on the services of a medical advisor' if evidence concerning the onset date is ambiguous." *Thomas v. Chater*, No. 96-6127, 1996 WL 730490, at *2 (2d Cir. Dec. 18, 1996) (quoting *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995)). Where an ALJ determines that a claimant is not disabled, however, the duty to determine an onset date is obviated and SSR 83-20 is inapplicable.[7] *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002).

Here, the ALJ determined that Staples was not disabled, thereby obviating any requirement to determine a disability onset date. *Id*. To the extent that Staples reads SSR 83-20 to require the use of medical advisors in all cases in which the date last insured is remote in time, he misconstrues the rule. Accordingly, the ALJ did not run afoul of his duties or obligations by failing to enlist the aid of a medical advisor.

## VII. Conclusion

---

[7] In *Blanda v. Astrue*, No. 05-CV-5723, 2008 WL 2371419, at *14-15 (E.D.N.Y. June 9, 2008), the District Court for the Eastern District of New York held that SSR 83-20 may be applicable in the absence of a finding of disability where the claimant suffers from a non-traumatic slowly-progressive condition and the medical evidence of record is inadequate. This interpretation of SSR 83-20, however, is inapplicable to the instant case.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Staples' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 18, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court